Filed 7/10/25  P. v. Clark CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CLARK,<br><br>    Defendant and Appellant. | B336955<br><br>Los Angeles County<br>Super. Ct. No. A760105 |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Christopher Muller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Colleen M. Tiedemann and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Robert Clark appeals the trial court's denial of his Penal Code section 1172.6[1] petition for resentencing. Clark argues the trial court erred by concluding he had not shown prima facie eligibility for section 1172.6 relief and denying his petition. Specifically, he contends the jury instructions at trial allowed the jury to convict him of murder if they found the homicide underlying the charge was a natural and probable consequence of a conspiracy to commit arson.

We reject Clark's contention. The jury instructions, read in conjunction with the prosecution's closing argument, demonstrate as a matter of law that Clark was prosecuted and convicted of murder on the theory that he acted with the intent to kill the victim. We therefore affirm the trial court's order denying him relief.

# FACTUAL BACKGROUND

On direct appeal, the Court of Appeal set forth the following statement of facts:[2]

> On the morning of November 24, 1984, Madeia Hester, her four-year-old son and Evonne Cakos were at home in their duplex apartment. [Charles Lavell] Turner, a drug dealer, went to the duplex with Clark,

---

1 All undesignated statutory references are to the Penal Code.

2 We rely on this information as background only. We base our assessment as to whether Clark is entitled to relief under section 1172.6 on our independent review of the record of conviction. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

Larry Neal and another man, "Smash," to discuss setting up a cocaine selling operation. Turner was "the boss"; both Clark and Neal were employed by him. At the duplex they began to drink, and Turner cooked cocaine at the kitchen table.

Sometime later Joe Johnson, who had attempted to rob Turner a month earlier, entered the duplex. Turner expressed anger and surprise when he saw Johnson, and Turner had a gun in his hand at that time. After finding out about Johnson's robbery attempt, Clark, Neal and Smash pulled Johnson into the house. Neal hit Johnson in the face with a bottle. Johnson was dragged to the couch and beaten by all four men. Cakos tried to stop them but was told by Turner to go to the back room. The beating continued. Neal hit Johnson with a second bottle. Johnson tried to escape but was knocked to the floor by Neal. While he was on the floor Turner hit him in the head with the gun and Clark hit him in the head with a frying pan. Part of the time the beating and killing of Johnson was taking place, Turner stood behind the door with a pistol in his hand which he pointed at the ceiling.

After Cakos complained a second time Turner told the others to stop and then allowed Cakos, Hester and the child to go to his car. As Hester carried her son out of the duplex, Clark, Neal and Tony were holding Johnson; Turner was standing nearby holding a gun pointed toward the ceiling. Turner followed Hester out to his car and stayed in the car for a few minutes.

While Turner was gone Clark wrapped an extension cord around Johnson's neck. Turner returned to the house. Turner went back to the car and said, "The boy is dying." Clark left the house and

returned while Turner was still outside. Clark told the others that Turner wanted Johnson killed. Clark handed Smash a knife, and Smash repeatedly stabbed Johnson. Clark attempted to start a fire in a bedroom closet. Turner returned to the house and discussed buying gasoline with Clark.

Eventually Turner, Clark and the women drove to a gas station. Turner bought gas in a container and returned to the duplex. Turner and Clark went in and shortly after came running out, along with Neal and Smash. There was an explosion, and they all drove off in Turner's car.

Johnson died from strangulation and the 41 stab wounds he received. Firefighters called to the duplex discovered Johnson's body along with a two-gallon can which was found to contain a flammable liquid, probably gasoline.

Clark testified in his own defense. He admitted to being in the duplex, drinking and using drugs, on the day of the murder. He testified to an argument between Turner and Johnson which turned into a fight. He denied being involved in the fighting. He claimed that he became sick from the combination of drugs and alcohol and went into the bathroom during the fighting. When he came out he saw Turner stabbing Johnson, and at that point he left the duplex. He admitted going to the gas station with Turner but denied going back into the house.

## PROCEDURAL BACKGROUND

In 1985, the Los Angeles County District Attorney charged Clark and two co-defendants with murder (§ 187) and arson (§ 451, subd. (b).) A jury convicted Clark of first degree murder

4

and arson.[3]  The trial court sentenced Clark to 25 years to life on the murder and a concurrent five-year term on the arson.  A different panel of this court affirmed the judgment on direct appeal.  (*People v. Clark* (Jul. 20, 1989, B020052) [nonpub. opn.].)

In 2023, Clark filed pro per a section 1172.6 resentencing petition, and the trial court appointed counsel on his behalf.  The prosecution filed a response, along with the jury instructions, transcripts of closing arguments, and verdict forms from Clark's trial, as well as this court's opinion resolving Clark's direct appeal.  In its response, the prosecution argued that neither the jury instructions nor the closing argument showed that the jury convicted Clark of murder based on an imputed-malice theory of liability.  Rather, the record of conviction demonstrated Clark's ineligibility for section 1172.6 relief as a matter of law.  In reply, Clark argued the jury instructions allowed the jury to convict him of murder on the theory that the homicide was a natural and probable consequence of a conspiracy to commit arson.  Thus, Clark contended, he had established a prima facie case for resentencing.

In February 2024, the trial court denied Clark's 1172.6 petition for resentencing on the ground that Clark had not made a prima facie case for relief.  Specifically, the court concluded the record of conviction demonstrated as a matter of law that Clark was not convicted of imputed-malice murder.  Clark timely appealed.

## STATUTORY FRAMEWORK

---

3      The jury also convicted co-defendant Turner on both counts.

5

In 2018, the Legislature, through Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), amended section 188 to eliminate the natural and probable consequences doctrine as a basis for murder liability. Subject to certain exceptions under the felony murder rule, section 188, subdivision (a)(3) now requires that a defendant act with malice to be convicted of murder.[4] Senate Bill 1437 also added section 1172.6, "which provides a procedure for defendants convicted of murder to seek resentencing if they are able to establish they could not be convicted of murder under the amendments to section 188 and 189 effective January 1, 2019." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1250, citing Stats. 2018, ch. 1015, § 4.)

To obtain relief under section 1172.6, a defendant convicted of imputed-malice murder first must attest to the following: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under [an imputed-malice theory of murder liability] . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . at which the petitioner could have been convicted of murder . . . . [and] [¶] (3) The petitioner could not presently be convicted of murder . . . [under current law]." (§ 1172.6, subds. (a).) Once a petitioner files a petition that so attests, the trial court must determine whether the petitioner has shown prima facie eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) If the trial court determines that the petitioner has

---

4       In 2021, through Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551), the Legislature clarified that the amendments made by Senate Bill No. 1437 were also intended to apply to attempted murder and manslaughter. (*People v. Hin* (2025) 17 Cal.5th 401, 441.)

made a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing (unless waived) at which the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under current law.  (§ 1172.6, subds. (c), (d)(3).)

## DISCUSSION

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)  In conducting this review, we assess the record of conviction as a whole.  (See *Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)  Reviewing Clark's record of conviction as a whole, we reject his contention that the jury instructions left open the possibility that the jury could have convicted him of imputed-malice murder.  Thus, we find the trial court did not err in concluding Clark's record of conviction demonstrates he is ineligible for section 1172.6 relief as a matter of law.

### A. Relevant instructions given at Clark's trial

The trial court instructed the jury with CALJIC No. 8.11, which defined express malice as "an intention unlawfully to kill a human being."  The version of CALJIC No. 8.11 the court provided did not reference or define implied malice.  The court also instructed the jury with CALJIC No. 8.20, which defined first degree murder as follows:

> All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with

7

express malice aforethought is murder of the first degree.

The world "willful," as used in this instruction, means intentional.

The word "deliberate" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word "premeditated" means considered beforehand.

If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree.

The trial court also instructed the jury on principles of direct aider and abettor liability, using CALJIC Nos. 3.00 and 3.01, and on uncharged conspiracy to commit murder or arson. For uncharged conspiracy, the court gave CALJIC No. 6.10.5, which provided as follows:

A conspiracy is an agreement between two or more persons with the specific intent *to agree to commit a public offense such as murder or arson, and with the further specific intent to commit such offense*, followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime, but is not charged as an offense in the [information] in this case.

> In order to find a defendant to be a member of a conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one overt act. It is not necessary to such a finding as to any particular defendant that he himself committed the overt act, if he was one of the conspirators when such an act was committed.

(Italics added.)

In addition, the trial court instructed the jury with CALJIC No. 6.11, which described conspiracy liability as follows:

> Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if said act or said declaration is in furtherance of the object of the conspiracy.

> The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators. *Every conspirator is legally responsible for an act of a coconspirator that follows as one of the probable and natural*[5] *consequences of the object of the conspiracy even though it was not intended as part of the original plan and even though he was not present at the time of the commission of such act.*[6]

---

5 In so instructing, the trial court phrased "the natural and probable consequences" theory of liability as "probable and natural consequences." The parties do not argue, nor do we imbue, any legal consequence to the court's phrasing.

6 This italicized language is the basis of Clark's argument on appeal that the instructions left open the possibility for the jury

9

(Italics added.)


### B. Closing arguments

The prosecution did not argue to the jury that Clark was liable for murder as a natural and probable consequence of a conspiracy to commit arson. Rather, the prosecution argued that Clark and co-defendant Turner were both guilty of murder because they, while harboring the intent to kill, aided and abetted each other and conspired with each other to murder the victim.

### C. Analysis

We conclude the trial court correctly found that the record of conviction establishes as a matter of law that Clark was not convicted of murder under an imputed-malice theory of liability. As set forth above, the jury was instructed that it could convict Clark of murder either as a direct aider and abettor or as a participant in a conspiracy to commit murder. Under either theory, in order to convict Clark of murder, the jury was instructed that it must find that he harbored the intent to kill the victim.

We reject Clark's contention that the "probable and natural consequences" language from CALJIC No. 6.11 allowed the jury to convict him of imputed-malice murder, thus rendering him prima facie eligible for section 1172.6 relief and entitled to an order to show cause and evidentiary hearing. CALJIC No. 6.11, read in conjunction with CAJIC No. 6.10.5 and the other instructions given, show that in order to convict Clark of murder

---

to convict him of murder under a now-invalid imputed-malice theory of liability.

10

under a theory of conspiracy liability, the jury was required to find he acted with an intent to kill. Indeed, CAJIC No. 6.10.5 defined conspiracy liability as an agreement between two or more persons to commit a charged offense, with the specific intent to commit *that crime*, followed by an overt act. And, critically, the instructions defining first degree murder defined the specific intent element of the offense as requiring the express intent to kill. In summary, the instructions, read as a whole, demonstrate as a matter of law that the jury necessarily convicted Clark of murder on the theory that he harbored the intent to kill the victim.

Moreover, the prosecution's closing argument renders a nullity any theoretical possibility that the jury could have used CALJIC No. 6.11 to convict Clark of imputed-malice murder as a natural and probable consequence of a conspiracy to commit arson. As described above, the prosecutor only argued to the jury that Clark was guilty of murder because he harbored the intent to kill the victim. The record reveals no reference to imputed-malice murder as a theory of liability or as a basis for conviction on the murder charge.

For these reasons, the trial court did not err in concluding that Clark is ineligible for section 1172.6 relief as a matter of law.

## DISPOSITION

We affirm the trial court's order denying Clark section 1172.6 relief.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

GARCIA UHRIG, J.*

We concur:

ZUKIN, P. J.

COLLINS, J.

---

\* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.